JOHN M. PORTER, SB# 62427
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
  E-Mail: porter@lbbslaw.com
650 East Hospitality Lane, Suite 600
San Bernardino, California 92408
Telephone: 909.387.1130
Facsimile: 909.387.1138

NEIL OKAZAKI, SB# 201367
**OFFICE OF THE CITY ATTORNEY**
**CITY OF RIVERSIDE**
  E-mail: jbrown@riversideca.gov
3900 Main Street, 3th Floor
Riverside, California 92522
Telephone: 951.826-5180
Facsimile: 951.826-5540

TIMOTHY T. COATES SB# 110364
ALAN DIAMOND, SB#60967
**GREINES, MARTIN, STEIN & RICHLAND**
  E-mail: tcoates@gmsr.com
5900 Wilshire Boulevard, 12th Floor
Los Angeles, California 90036
Telephone: 310.859.7811
Facsimile: 310.276.5261

Attorneys for Defendants, City of Riverside, Sancho Lopez, and Brett Porter

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULRIKE DUNBAR, etc., et al., | Case No.: ED CV 13-00847 JBG (SPx) |
| Plaintiffs, | **DEFENDANTS' REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| CITY OF RIVERSIDE, et al., | [Fed. R. Civ. P. 56(a)(b)] |
| Defendants. | Hearing Date: September 15, 2014<br>Time: 9:00 a.m.<br>Dept.: Courtroom 1<br>Trial Date: December 16, 2014 |
| | [Hon. Jesus G. Bernal, Presiding] |

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

I. PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE MEDICAL AID COMPONENT OF ALL THEIR FEDERAL CLAIMS BECAUSE (1) THEY FIRST RAISED THEIR NEW THEORY THAT THE OFFICERS DENIED THE MEDICS ACCESS TO DUNBAR BY STAGING THEM OFFSITE IN THEIR OPPOSITION PAPERS; (2) UNDISPUTED FACTS SHOW NEITHER THE DEFENDANT OFFICERS NOR ANYONE ELSE STAGED MEDICAL AID; AND (3) PLAINTIFFS CONCEDE THAT ABSENT SUCH STAGING, THE OFFICERS' ONLY DUTY WAS TO PROMPTLY CALL FOR MEDICAL AID, WHICH UNDISPUTED FACTS SHOW PLAINTIFFS DID. ..... 2

    A. This Court Cannot Consider Plaintiffs' Staging Theory As It Was Not Pleaded But Raised For The First Time In Their Opposition. ..... 2

    B. The Undisputed Evidence Shows That No One, Much Less The Defendant Officers, Staged Medical Aid To Dunbar. ..... 4

    C. The Undisputed Evidence Shows That After Lopez Shot Dunbar, Porter Promptly Called For Medical Aid. ..... 6

II. THE OPPOSITION OFFERS NO BASIS FOR DENYING QUALIFIED IMMUNITY. ..... 9

III. THE OPPOSITION OFFERS NO BASIS FOR DENYING PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' MONELL AND CONSPIRACY CLAIMS. ..... 9

IV. THE OPPOSITION OFFERS NO BASIS FOR DENYING PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' STATE LAW CLAIMS. ..... 9

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Navajo Nation v. U.S. Forest Service*
535 F.3d 1058, 1079-80 (9th Cir. 2008) ............ 3

*Pickern v. Pier 1 Imports (U.S.), Inc.*
457 F.3d 963, 968-969 (9th Cir. 2006) ............ 4

*Tatum v. City and County of San Francisco*
441 F.3d 1090, 1099 (9th Cir. 2006) ............ 1, 4, 9

*Transport Truck & Trailer, Inc. v. Freightliner, LLC*
368 F. App'x. 786, 788 (9th Cir. 2010) ............ 3

*Trishan Air, Inc. v. Fed. Ins. Co.*
635 F.3d 422, 435 (9th Cir. 2011) ............ 3

*Wasco Products, Inc. v. Southwall Technologies, Inc.*
435 F.3d 989, 992 (9th Cir. 2006) ............ 3

# INTRODUCTION AND SUMMARY OF ARGUMENT

The most compelling reason for granting partial summary judgment on plaintiffs' medical aid theory is that they have abandoned it. Instead, they introduce an entirely new theory in hopes of avoiding dismissal. But that won't work: plaintiffs never pleaded the new theory and it lacks any factual basis.

In plaintiffs' First Amended Complaint, they alleged that Officers Lopez and Porter acted unreasonably in that they failed to treat decedent Dunbar's injuries themselves. However, as shown in the moving papers, the irrefutable evidence shows the officers called for medical aid promptly after Dunbar was shot and "the Constitution required them to do no more." *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006).

That's why plaintiffs entirely change the theory of their case. They now concede that *Tatum* "is apposite and correctly reflects the current state of the law." (Opp. 13.) They accept that police officers are not themselves required to provide medical aid to an injured suspect—the crux of their complaint—and characterize even the issue of whether the officers timely summoned medical aid as "a red herring." (Opp. 6, 13-14.) Instead, plaintiffs argue that "the central conduct that [they] contend was wrongful and unreasonable" is "the 'staging' of the paramedics and the delay in the provision of medical care to Dunbar at the scene." (Opp. 6.) That is, although officers had declared the scene to be safe, plaintiffs assert "they continued to stage the paramedics who were not allowed access to treat Mr. Dunbar." (Opp. 8, 12.) Where staging occurred, plaintiffs contend, *Tatum* would not apply and officers would have to treat the suspect themselves. (Opp. 13-14.)

But plaintiffs' new staging theory is pure fantasy. It cannot defeat summary judgment. First, it *is* a wholly *new* theory, one plaintiffs never pleaded (or raised at the meet and confer), and thus, as case law makes clear, plaintiffs cannot use it to oppose summary judgment. Second, plaintiffs' assertion of staging is wholesale

DEFENDANTS' REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

invention based on contrived and plainly incorrect readings of the record. The undisputed evidence shows that medical aid was not staged or in any way delayed in reaching Dunbar. According to Fire Department Captain Michael Williams, while en route to the scene, dispatch told his team not to stage, and that they were cleared to go right in to treat the suspect, and that is what they did. As Williams stated: "There was absolutely no delay from our arrival on the scene until we were with the patient, other than the time it took to unload equipment and walk to the back yard"—which "took a minute or two." (Williams Decl., ¶12.)

Plaintiffs can point to no evidence of staging—because staging never happened. Nor is there any evidence that Porter waited 12 minutes, rather than mere seconds, to call for medical aid after Lopez shot Dunbar. Plaintiffs' assertion to the contrary is so absurd that it would have Porter calling in "shots fired" even before the officers stopped Dunbar's vehicle.

**I.    Plaintiffs Are Entitled To Partial Summary Judgment On The Medical Aid Component Of All Their Federal Claims Because (1) They First Raised Their New Theory That The Officers Denied The Medics Access To Dunbar By Staging Them Offsite In Their Opposition Papers; (2) Undisputed Facts Show Neither The Defendant Officers Nor Anyone Else Staged Medical Aid; And (3) Plaintiffs Concede That Absent Such Staging, The Officers' Only Duty Was To Promptly Call For Medical Aid, Which Undisputed Facts Show Plaintiffs Did.**

**A.    This Court Cannot Consider Plaintiffs' Staging Theory As It Was Not Pleaded But Raised For The First Time In Their Opposition.**

A plaintiff cannot defeat summary judgment by introducing a new theory in his opposition papers. The pleadings define the boundaries of the issues to be resolved at summary judgment. A moving party seeking summary judgment is not required to go beyond the allegations of the pleading, with respect to new theories that could have been pled, but for which no motion to amend or supplement the

pleading was brought, prior to the hearing on the dispositive motion. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a); but a plaintiff may not amend his complaint through argument in a brief opposing summary judgment. *E.g.*, *Transport Truck & Trailer, Inc. v. Freightliner, LLC*, 368 F. App'x. 786, 788 (9th Cir. 2010) (as Second Amended Complaint did not mention 2003 negotiations with which Freightliner allegedly interfered, plaintiff's intentional interference claim was not pleaded and "does not prevent summary judgment"); *Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 435 (9th Cir. 2011) (claim first mentioned in opposition to summary judgment "was not properly before the district court"); *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1079-80 (9th Cir. 2008) (where "complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("'summary judgment is not a procedural second chance to flesh out inadequate pleadings.'").

  Here, the crux of plaintiffs' First Amended Complaint on the medical aid issue is that Officers Lopez and Porter failed to themselves treat Dunbar's wound, *i.e.*, they "made no attempt to timely render basic first aid to stop or mitigate the bleeding," "prevented [Dunbar] from even self-administering a tourniquet to save his own life" and "fail[ed] to provide emergency medical attention to him before the ambulance arrived." (FAC, ¶¶29-30, 32; *see also* ¶¶ 62, 64, 79.)

  In their opposition papers, however, plaintiffs have abandoned these allegations in favor of a new theory that plaintiffs stopped the paramedics from treating Dunbar once they arrived on scene by staging them off site. Indeed, so complete is plaintiffs' transformation of their original case that they insist that focusing on whether Officers Lopez and Porter timely summoned medical care "is a red herring," as "it ignores the central conduct that Plaintiffs contend was

1 wrongful and unreasonable: the 'staging' of the paramedics and the delay in the
2 provision of medical care to Dunbar at the scene." (Opp. 6.)

3     Plaintiffs also no longer argue that the defendant officers were required to administer medical aid to Dunbar, as they acknowledge that *Tatum*, which limits an officer's Fourth Amendment duty to promptly calling for medical aid, "is apposite and correctly reflects the current state of the law." (Opp. 13.) But plaintiffs argue staging paramedics changes that: officers must "administer reasonable medical care . . . *if* they were not going to permit paramedics to attend to the decedent." (Opp. 14, emphasis added.)

    But none of this is alleged at all in the First Amended Complaint. It cannot be teased out of general allegations on the same subject; it must be specifically pleaded. *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-969 (9th Cir. 2006) (plaintiff can't defeat summary judgment based on "specific factual allegations presented for the first time in [her] opposition to summary judgment" showing ADA violations, although she generally pleaded other ADA violations).

    **B.    The Undisputed Evidence Shows That No One, Much Less The Defendant Officers, Staged Medical Aid To Dunbar.**

    No medical aid was staged. Captain Williams of the RFD testified that the call for medical aid came at 2:30 a.m., that the RFD dispatcher initially told both the fire department and the ambulance service to stage "until cleared by the police to come to the scene," which was standard procedure, but while en route, RFD dispatch told Williams not to stage, but just to roll in, and said the same to AMR. (Williams Decl., ¶¶6-10, 14 & Exs. 601-A and 602-A thereto.) And both the paramedics and AMR personnel arrived at 2:38 a.m., the latter just moments after the former, and each unloaded their gear and went right to Dunbar. (Williams Decl., ¶¶12, 14; Jensen Decl., pp. 3-4; Casselman Decl., Ex. K; and Trial Ex. 603, attached to or referenced in the Jensen, Suppl. Jensen and John Porter Decls.)

This is confirmed by Officer Lopez' belt recorder. At 06:27 a.m., Officer Hibbard, one of several officers responding to the scene, tells Dunbar that "[m]edics are here." (Trial Exs. 3001, 3004, p. 8, attached to or referenced in the Suppl. Lopez Decl.) Under two minutes later, a medic approaches the officers, exactly within the time frame Williams testified to. At that point, Officer Hibbard actually hurries the medic along by telling him that Dunbar may have just coded. (*Id.*, p. 9.) The arriving medic states, at 08:01, "Well, we're all going to get in here and get started then right?" And Lambert tells him to go ahead. (*Id.*) No staging there. Moments later, police met the AMR ambulance and escorted the unit to Dunbar so that from its arrival to his side was just over a minute. (Casselman Decl., Ex. K; Williams Decl., ¶12; Suppl. Jensen Decl., ¶11.) No staging there either.

Because plaintiffs have no evidence to show otherwise, they invent it. They rewrite the above-quoted language the medic used on the belt recording, changing "Well, we're all going to get in here and get started then right?" to "We *ought to get them in here* and get started then right," and plaintiffs then put those invented words into the mouth of an officer. (Opp. 9.) Then, on that basis, they argue that the officer "is referring to the fact that paramedics have not been permitted to treat Dunbar yet." (*Compare* Trial Exs. 3001, 3004, with Opp. 9.) That inference would be entirely unjustified in any event; but no one (and certainly not an officer) used the words "[w]e ought to get them in here."[1]

---

[1] Plaintiffs themselves tout the fact that "the scene was declared safe or 'Code-4' (seven distinct times) before the medics even arrived." (Opp. 5, 8.) If the officers were looking to deliberately delay medical aid from reaching Dunbar, this is the last thing they would be broadcasting.

### C. The Undisputed Evidence Shows That After Lopez Shot Dunbar, Porter Promptly Called For Medical Aid.

Without proof by plaintiffs of a triable issue of material fact that staging occurred, defendants are entitled to partial summary judgment. After all, that is how plaintiffs themselves frame the issue. (Opp. 12-14.) If no staging, then no duty by the officers to do other than call for medical aid. And plaintiffs themselves disclaim, at least in their legal arguments, that "the issue of whether the officers made a request for medical personnel to respond shortly after the shooting" is "a red herring because it does not address the [staging] conduct that Plaintiffs allege is wrongful, unreasonable, and violated the Constitution." (Opp. 13.)

However, in their factual statement and in response to defendants' separate statement, plaintiffs claim the officers waited 10 to 12 minutes before calling for medical aid. That's not a properly presented legal argument. It is also groundless.

As plaintiffs themselves tell the story in sworn interrogatory answers, Officers Lopez and Porter stopped the vehicle in which Dunbar was a passenger in the early morning hours of March 1, 2012 and "[d]uring the course of the traffic stop," Dunbar "ran away from the scene," "Lopez engaged in a foot pursuit of Mr. Dunbar, who had jumped a fence or wall and entered the backyard of a residence of Craig Dales." (Diamond Decl., Ex. 2, p. 5; FAC, ¶17.)

The times of these events are a matter of record. The officers stopped Dunbar's car at 2:26 a.m. (Jensen Decl., p. 2; Suppl. Jensen Decl., p. 3; Diamond Decl., Ex. 4, p. 26; Trial Ex. 500, attached to or referenced in the Jensen, Suppl. Jensen, and John Porter Decls.; Trial Ex. 507-C, attached to or referenced in the Jensen and John Porter Decls.; Trial Ex. 507-U [Riverside Police Dept. CLETS Activity Report], attached to or referenced in the John Porter and Suppl. Jensen Decls.) Officer Lopez radioed "foot pursuit" at 2:29 a.m. (Jensen Decl., pp. 2-3; Suppl. Jensen Decl., p. 4; John Porter Decl., p. 2; Trial Exs. 500, 501, attached to or referenced in the Jensen and Suppl. Jensen Decls.; Trial Ex. 507-C, attached to

or referenced in the Jensen and John Porter Decls.; Trial Ex. 3003, attached to or referenced in the Suppl. Lopez, Suppl. Jensen, and John Porter Decls.)  As plaintiffs concede, during the course of the pursuit "Officer Lopez accidently dropped his radio," so he "was unable to make the call that shots had been fired." (Opp. 7; *see also* citations in Motion, pp. 8-9; Lopez Decl. ¶¶ 3, 4; Suppl. Lopez Decl. ¶¶ 15, 16; Diamond Decl. Ex. 3, pp. 17, 18, 26, 56-57, 191, 192.)

Immediately after Lopez shot Dunbar, at 2:30 a.m., he directed Porter to put out "shots fired" on his radio.  (Brett Porter Decl., ¶3; Lopez Decl., ¶ 3; Suppl Lopez Decl., ¶16; Jensen Decl., p. 3.)  Porter did so "at once," adding "'1199,' code for officers need help, advised that there was a victim with a gunshot wound, requested an ambulance to be sent and gave our unit number (Adam 315) and location."  (Brett Porter Decl., ¶3.)  Both officers testified that Porter's call took place "within mere seconds of the shooting."  (*Id*.; Lopez Decl., ¶3.)  And this is confirmed by the following:  (1) Trial Ex. 501 [RPD Incident Recall print-out], attached to or referenced in the Jensen and Suppl. Jensen Decls; (2) Trial Ex. 3002 [RPD Channel 3 Radio Traffic CD], attached to or referenced in the Jensen, Suppl. Jensen, and John Porter Decls.; (3) Trial Ex. 3003 [RPD Channel 3 Radio Traffic transcript with elapsed and clock times], attached to or referenced in the Suppl. Jensen, Suppl. Lopez and John Porter Decls.; (4) Jensen Decl., p. 3; (5) Trial Ex. 507-C; (6) Trial Ex. 603; (7) John Porter Decl., ¶9; (8) Trial Ex. 507-U; and (9) Casselman Decl., Ex. K, p 1.)

Contrary to this mountain of evidence showing that Lopez and Porter stopped the vehicle in which Dunbar was a passenger at 2:26 a.m., and that Porter called in shots fired and for medical aid at 2:30 a.m., plaintiffs argue that "the 'shots fired' call was made at 2:21 a.m.," while "the paramedics were not dispatched until 2:31 a.m."  (Opp. 7.)  On that basis, plaintiffs argue that "[t]here was a ten minute delay in requesting medical aid between the shooting at 2:21 a.m. and call to RFD at 2:31 a.m."  (Plaintiffs' Controverted Fact 38, p. 16.)

Nonsense. Plaintiffs themselves show the absurdity of this contention. They state that it is "undisputed" that "Dunbar was a passenger in the van stopped at approximately 2:26 a.m." (Plaintiffs' Response To Separate Statement, Fact No. 5.) How, then, could the "shots fired" call have been made at 2:21 a.m.? Dunbar would have had to have been shot five minutes before the officers even stopped the van in which he was riding. Obviously, plaintiffs' timeline is an impossibility.

Yet, even while conceding a 2:26 a.m. traffic-stop time, plaintiffs elsewhere suggest there is evidence that the Dunbar vehicle was stopped earlier than 2:26 a.m., because according to the RPD radio dispatch recording Channel 3, "at 2:18 a.m the traffic stop was conducted." (Plaintiffs' Response to Separate Statement, Fact 5.) Plaintiffs are wrong. Plaintiffs are confusing *earlier radio traffic from another police car, Unit Adam 427,* which plaintiffs wrongly attribute to Adam 315, Lopez and Porter's car. (Trial Ex. 3001, attached to or referenced in John Porter and Suppl. Lopez Decls.) The "RPD radio dispatch recording Channel 3" (Trial Ex. 3001) that plaintiffs purport to rely on (*see* Plaintiffs' Response to Separate Statement, Fact 5) starts six minutes before the traffic stop of the vehicle in which Dunbar was a passenger, and there is no radio traffic from Adam 315 during those six minutes until its 2:26 a.m. traffic stop of the vehicle in which Dunbar was a passenger. (*See* Trial Exs. 3001, 3002, 3003.)[2]

---

[2] Plaintiffs double down on this invented scenario by adding two minutes more to the already false ten-minute gap, stating that it took two additional minutes "for Officer Porter to catch up with Officer Lopez and make the call" for medical aid. (Opp. 7; Plaintiffs' Controverted Facts 49, 50, p. 19.) To support this, plaintiffs disingenuously cite evidence that plainly does *not* bear on how long it took Porter to join Lopez *at* the wall, but relates *only* to how long *after that* Porter *climbed over the wall into the backyard*. (Plaintiffs' Controverted Facts 49, 50, p. 19.) For example, this piece of evidence: Lopez was asked at deposition how long it was "after you got *in the backyard* . . . that your partner [Porter] appeared *in the backyard*," and Lopez answered, "Approximately two minutes." (Casselman Decl., Ex. A at pp. 91:22-25.) Plaintiffs' other citations are to the same effect.

## II. The Opposition Offers No Basis For Denying Qualified Immunity.

Citing *Tatum*, plaintiffs argue that it has long been clearly established that it is unconstitutional "to unreasonably deny medical care to an arrestee." (Opp. 10-12.) But no such unreasonable denial of medical care occurred in this case, because no staging occurred here and the officers conduct comported with *Tatum*. Moreover, plaintiffs argue that Lopez and Porter were governed by RPD policies "to provide care for all injured persons." (*Id*.) Obviously, local police policy was not intended to and cannot impose a higher duty of reasonableness on police than required by case law. At any rate, the officers "provided care" when they promptly called for medical aid and did nothing to delay that aid coming to Dunbar. In short, defendant officers are entitled to qualified immunity.

## III. The Opposition Offers No Basis For Denying Partial Summary Judgment On Plaintiffs' Monell And Conspiracy Claims.

Plaintiffs do not challenge defendants' showing that neither of those claims can succeed unless plaintiffs prove a viable underlying constitutional claim. (Motion 16-18.) As plaintiffs acknowledge, in light of *Tatum*, they have no viable constitutional claim based on their pleadings. Now they rely instead on their new, unpleaded staging claim as their pertinent underlying claim. (Opp. 17.) But for the reasons already discussed, that is not a viable claim or a basis for opposing summary judgment.

## IV. The Opposition Offers No Basis For Denying Partial Summary Judgment On Plaintiffs' State Law Claims.

Plaintiffs have dropped their California constitutional claims. (Opp. 20.) They do not challenge defendants' statement of the law on vicarious liability. (Opp. 20; Motion 23-24.) In the moving papers, defendants showed that plaintiffs' state law claims were substantively identical to plaintiffs' federal claims on the issue of post-shooting medical aid, and under long settled law, were analyzed under the Fourth Amendment, no matter what the label, whether negligence or

DEFENDANTS' REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT
9

battery or intentional infliction of emotional distress. (Motion 21-22.) Plaintiffs of course now claim that the medical care issue involves the new staging theory. (Opp. 18.) But the law remains the same as set out in the moving papers. Not one case plaintiffs cite detracts from the fact that their state law claims are decided under the same Fourth Amendment standards as the federal claims. (Motion 21-22.) They fail for all the same reasons that plaintiffs' federal claims fail.

## CONCLUSION

For all the foregoing reasons, defendants ask this Court to grant partial summary judgment to all defendants on the medical care component of each of plaintiffs' claims.

Respectfully submitted,

Dated: August 25, 2014      LEWIS BRISBOIS BISGAARD & SMITH LLP
CITY OF RIVERSIDE
GREINES, MARTIN, STEIN & RICHLAND LLP


By: /s/ Alan Diamond
Alan Diamond

Attorneys for Defendant CITY OF RIVERSIDE, SANCHO LOPEZ, and BRETT PORTER