UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 13-847-JGB (SPx)** | Date | October 20, 2014 |
|---|---|---|---|
| Title | *Ulrike Dunbar et al., v. City of Riverside et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order** (1) GRANTING Defendant's Motion for Partial Summary Judgment

     Before the Court is Defendants' Motion for Partial Summary Judgment.  (Doc. No. 27.) After reviewing and considering all papers filed in support of and in opposition to the Motion, as well as the arguments presented at the October 20, 2014 hearing, the Court GRANTS the Motion.

## I.  BACKGROUND

     On October 25, 2013, Plaintiffs Ulrike Dunbar and Brandon Dunbar Jr. (collectively "Plaintiffs") filed the operative First Amended Complaint ("FAC") against Defendants City of Riverside ("City"), Officer Sancho Lopez, and Officer Brett Porter (collectively "Defendants") alleging various claims stemming from the shooting death of Brandon Dunbar.  Plaintiffs allege the following claims under 42 U.S.C. § 1983 and state law: (1) excessive force in violation of the Fourth Amendment; (2) violation of due process under the Fourteenth Amendment; (3) municipal liability (Monell); (4) deprivation of life without due process under the Fourteenth Amendment; (5) deliberate indifference – failure to train and supervise; (6) conspiracy (7) deprivation of familial companionship under the Fourteenth Amendment; (8) deprivation of life without due process under Article I, § 7 of the California Constitution[1]; (9) cruel and unusual

---

[1] Plaintiffs have withdrawn claims eight and nine.  (Opp'n at 20.)

punishment in violation of Article I, § 7 of the California Constitution; (10) wrongful death; (11) negligence; (12) battery; and (13) intentional infliction of emotional distress.[2] (Doc. No. 18.)

On June 23, 2014, Defendants filed a Motion for Partial Summary Judgment ("Motion," Doc. No. 27), specifically on the issue of the post-shooting medical care provided to Mr. Dunbar. In support of the Motion, Defendants attached:
- Statement of Undisputed Facts ("SUF," Doc. No. 28);
- Declaration of Brett Porter ("Porter Decl.," Doc. No. 27-2)
- Declaration of Sancho Lopez ("Lopez Decl.," Doc. No. 27-3)
- Declaration of Michelle Jensen ("Jensen Decl.," Doc. No. 27-4), attesting to three exhibits; and
- Declaration of Alan Diamond ("Diamond Decl.," Doc. No. 27-6), attesting to four exhibits (Docs. No. 27-7 – 27-10).

Plaintiffs filed an opposition to Defendants' Motion ("Opp'n," Doc. No. 33) on July 28, 2014, attaching:
- Statement of Genuine Disputes ("SGD," Doc. No. 33-1)
- Statement of Undisputed Facts ("Plaintiffs' SUF," Doc. No. 33-2.)
- Declaration of Gary Casselman ("Casselman Decl.," Doc. No. 34), attesting to Exhibits 1-16 (Doc. Nos. 34-1 – 34-16);
- Excerpt of Deposition Transcript of Sancho Lopez ("Lopez Depo.," Doc. No. 34-1);
- Excerpt of Deposition Transcript of Brett Porter ("Porter Depo.," Doc. No. 34-2);
- Declaration of Michael Metcalf ("Metcalf Decl.," Doc. No. 34-3); attesting to the Expert Report of Michael Metcalf ("Metcalf Report," Doc. No. 34-4)
- Excerpt of Officer Involved Shooting Interview of Sancho Lopez Transcript ("Lopez Interview," Doc. No. 34-5)
- Declaration of Dr. John Thomas ("Thomas Decl.," Doc. No. 34-8); and
- Expert Report of Paul Kellner ("Kellner Report," Doc. No. 34-13)

Defendants replied on June 16, 2014 ("Reply," Doc. No. 41) attaching:
- Response to Plaintiffs' SUF (Doc. No. 42.)
- Objections to Evidence Submitted by Plaintiffs (Doc. No. 43)
- Declaration of John Porter ("Porter Decl.," Doc. No. 44.) attaching three exhibits;
- Declaration of Fire Chief Michael Williams ("Williams Decl.," Doc. No. 45), attaching two exhibits;
- Supplementary Declaration of Sancho Lopez ("Lopez Supp. Decl.," Doc. No. 46) attaching four exhibits;
- Supplementary Declaration of Michelle Jensen ("Jensen Supp. Decl.," Doc. No. 34-3); attaching three exhibits

---

[2] Plaintiffs assert claims one, two, four and seven through thirteen against the officers only. Plaintiffs assert claims three and five against the City of Riverside, and assert claim six against the City and the officers.

## II. LEGAL STANDARD[3]

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out an absence of evidence supporting the non-moving party's case. Id. The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252; see also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial, 14:144. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." In re Oracle, 627 F.3d at 387 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

## III. Evidentiary Objections

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002); see Fed. R. Civ. Proc. 56(e). At the summary judgment stage, district courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003); Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001).

---

[3] Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

Plaintiffs object to portions of Defendants' supporting declarations and exhibits on the grounds that the statements are irrelevant, compound, vague, ambiguous, lack foundation, misstate the evidence, and constitute legal conclusions. (Doc. No. 33-1.) Defendants also object to portions of Plaintiffs' supporting declarations and exhibits on similar grounds. (Doc. No. 43.) "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are thus "redundant" and unnecessary to consider here. Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); see also Anderson, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted."). Thus, the Court does not consider any objections on the grounds that the evidence lacks foundation, assumes facts in dispute, is misleading, vague, ambiguous, conclusory, speculative, conjecture, compound, irrelevant, or argumentative. These objections are challenges to the characterization of the evidence and are improper on a motion for summary judgment.

Defendants also object to portions of the Metcalf Report and Kellner Report as being inadmissible hearsay and/or outside the scope of expert testimony. The Court does not rely on the disputed portions of either report, and thus DENIES AS MOOT these objections.

## IV. DISCUSSION

### A. Undisputed Facts

Except as noted, the following material facts are sufficiently supported by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for purposes of the Motion for Summary Judgment. L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R. Civ. P. 56(e)(2) (stating that where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

Officers Sancho Lopez and Brett Porter, members of the Riverside Police Department ("RPD"), were on patrol the night of March 1, 2012. (SUF ¶ 1.) In the early morning hours, the officers pulled over a vehicle in which Brandon Dunbar was a passenger. (Id.) At some point during the stop, Mr. Dunbar exited the van and took off running, with Officer Lopez in pursuit. (Id. ¶ 2.) Officer Lopez radioed to dispatch that he was in a foot pursuit. (RPD print-out at 1; Jensen Decl. at 2) During the chase, Mr. Dunbar climbed over a wall into the backyard of a residence. (SUF ¶ 6.) Officer Lopez scaled the wall, and while braced there, fired multiple shots at Mr. Dunbar. (Id. ¶¶ 3,6) One of these gunshots struck Mr. Dunbar in the knee area, partially severing the popliteal artery and causing immediate, arterial bleeding. (Id. ¶ 3.)

Officer Porter – who had remained with the vehicle and driver during Lopez's pursuit of Mr. Dunbar – then joined Officer Lopez at the wall. (Porter Depo. 71:7-12.) Officer Lopez, who had dropped his radio and flashlight before climbing the wall, instructed Officer Porter to radio an update to dispatch. (Lopez Decl. ¶ 3). Officer Porter radioed "shots fired" as well as "11-99," the code for the highest level of police emergency. (Porter Decl. ¶ 3; Jensen Decl at 3; Jensen Decl., Exh. 3002.) Officer Porter, in the same transmission, also stated "we've got a victim of a

gunshot wound, can we get AMR?" (Id.) American Medical Response ("AMR") is the private ambulance service in Riverside. (Jensen Decl. at 1.)

Immediately after Officer Porter's transmission, the Riverside Fire Department ("RFD") initiated the call for service and dispatched an AMR ambulance and RFD Engine #3. (Jensen Decl., Exh. 603, RFD Incident Recall print-out ("RFD print-out") at 1, Doc. No. 27-5.) The dispatcher indicated that the call was for a police emergency and that the medical units were to "stage," meaning that upon arrival, the units were to wait nearby until cleared by the police to enter the scene. (Williams Decl. ¶ 8; Williams Decl., Exh. 602-A, Transcript of RFD Channel 2 radio traffic ("Transcript RFD 2") at 1.)

At some point after the shooting, Officer Lopez activated his belt-recorder. (Casselman Decl., Exh. N, ("Lopez Belt Recording").) Mr. Dunbar can be heard to say at various times, "I can't breathe," "please," and "help me." (Response to Plaintiffs' SUF ¶ 65.) Both officers could see that Mr. Dunbar was bleeding and heard him say that he could not breathe. (SUF ¶ 14.) Neither officer provided any medical aid to Mr. Dunbar. (Id. ¶ 18.) After the shooting, but before the paramedics arrived, several other officers arrived on the scene. One of these officers, speaking about Mr. Dunbar, stated to Officer Lopez at one point: "Hey, he's coding." (Response to Plaintiffs' SUF ¶ 89.) Coding, used in this sense, meant dying. (Id. ¶ 90.) About two minutes later, another officer states "I think he just coded." (Id. at 110.) The paramedics arrived at the scene and were unable to revive Mr. Dunbar.

In its Motion, Defendants argue solely that the post-arrest medical care provided to Mr. Dunbar was constitutionally sufficient and thus summary judgment should be granted on this aspect of Plaintiffs' claims. (Motion at 14.) Defendants argue that Officer Lopez and Officer Porter promptly summoned medical care, which was all they were required to do. (Id.) Plaintiffs respond that the officers' request for medical assistance was unnecessarily delayed, that the officers should have provided first aid to Mr. Dunbar, and that the medical units who arrived were unnecessarily "staged", thus further delaying medical assistance. (Opp'n at 7-9.)

### B. The Officers' Request for Medical Assistance

The Ninth Circuit has held that "[d]ue [p]rocess requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." Maddox v. City of Los Angeles, 792 F.2d 1408, 1415 (9th Cir. 1986) (emphasis added).

Plaintiffs argue that there was up to a twelve-minute delay between the time of the shooting and when the paramedics were dispatched. (Opp'n at 7.) Plaintiffs first argue that Officer Porter, who was not present when Officer Lopez shot Mr. Dunbar, did not arrive at Officer Lopez's location until two minutes after the shooting. (Id.) However, Plaintiffs present

no evidence that this alleged delay was unreasonable, if it even occurred.[4] Officer Porter stated that he was 100 yards away from Officer Lopez at the time of the shooting. (Porter Depo. 58:7-8.) He rushed to the shooting immediately and made the "shots fired" radio call as Officer Lopez instructed, since Officer Lopez had dropped his radio. (Porter Depo. 71:7-12; Lopez Decl. ¶ 3.) Both officers testified that Officer Porter's radio call took place immediately after the shooting. (Porter Decl. ¶ 3; Lopez Decl. ¶ 3.) Such minimal delay is not unreasonable.

Plaintiffs also argue that Officer Porter made the "shots fired" radio call at 2:21 am. (Opp'n at 7.) Plaintiffs evidence does not support this claim, and fails to create a triable issue of material fact. Plaintiffs base their timing calculations on a recording of "RPD radio channel 3" (Plaintiffs' SUF ¶ 21) which Plaintiffs submitted as evidence. (Casselman Decl., Ex. P. ("RPD Channel 3").) The recording consists of an electronic .wav file, entitled: "#p12030492_OIS Channel 3 traffic with Silence_030112_0212hrs_0558hrs.wav." (Id.) Plaintiffs interpret the file's name to mean that the recording began at 2:12 am. (Plaintiffs' SUF ¶ 21.) Since the "shots fired" call occurs nine minutes and forty-nine seconds into the recording, Plaintiffs argue that the shooting occurred at 2:21 am. (Id. ¶ 37.) Plaintiffs then cross reference this time with the RFD Incident Log, which shows that RFD Engine #3 and the AMR ambulance were dispatched at 2:30 am. (Jensen Decl., Exh. 603, RFD Incident Recall print-out ("RFD Incident Log") at 1, Doc. No. 27-5.) Plaintiffs argue this shows a ten minute delay between the "shots fired" call and the dispatch of the medical units. (Opp'n at 7.)

However, the rest of the events on the RPD Channel 3 recording do not mesh with Plaintiffs' timeline. For example, at 15:34 (elapsed time) on the recording – 2:27 am according to Plaintiffs' proposed timeline – an officer inquires about the medical units. (RPD Channel 3.) When informed by the dispatcher they are staging, the officer tells the dispatcher to have them "roll right in." (Id.) This direction would not comport with the RFD Incident log, as the medical units were not dispatched until 2:30 am. (RFD Incident Log at 1.)

Furthermore, both the RPD Incident Recall print-out (Jensen Decl., Exh. 500, ("RPD Incident Log") at 1, Doc. No. 27-5) and the RPD Unit Log (Jensen Decl., Exh. 507-A, ("RPD Unit Log") at 1, Doc No. 27-5) reflect that Officer Porter made the "shots fired" call at 2:30 am. These logs correspond with the RFD Incident Log, which reflects that RPD dispatch initiated the call for medical units at 2:30 am, and the medical units were dispatched immediately. (RFD Incident Log at 1.) Moreover, Michelle Jensen, a police and fire dispatcher, declares that the various logs conclusively establish that the traffic stop occurred at 2:26 am, Officer Lopez radioed that he was in a foot pursuit at 2:29 am, and Officer Porter made the "shots fired" call at 2:30 am. (Jensen Decl. at 2-3.) It is unclear why the digital file's name suggests the recording began at 2:12 am, but such a small discrepancy – unsubstantiated by other evidence – is insufficient to create a genuine issue of material fact.

---

[4] Plaintiffs cite evidence that does not address how long it took Officer Porter to join Officer Lopez at the wall, but rather when Officer Porter climbed over the wall into the backyard. (Plaintiffs' SUF ¶ 49.) Officer Lopez was asked at his deposition how long it was "after you got in the backyard . . . that your partner appeared in the backyard," and Lopez answered, "approximately two minutes." (Lopez Depo. 91:22-25.)

### C. The Officers' Failure to Provide First Aid

Defendants argue that Officer Lopez and Officer Porter promptly summoned medical care, and thus their actions were objectively reasonable given the circumstances. (Motion at 14-15.) Defendants also argue that Plaintiffs improperly assert their inadequate medical care claims under the Fourteenth Amendment instead of the Fourth.[5] (Motion at 12.)

Due [p]rocess requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." Maddox v. City of Los Angeles, 792 F.2d 1408, 1415 (9th Cir. 1986). In 1989, the Supreme Court held that "all claims that law enforcement officers have used excessive force . . . should be analyzed under the Fourth Amendment" Graham v. Connor, 490 U.S. 386, 395 (1989). Thus, while maintaining that "Maddox sets the standard for objectively reasonable post-arrest care," the Ninth Circuit has analyzed claims of failure to provide adequate medical care to an arrestee under the Fourth Amendment. Tatum v. City and County of San Francisco, 441 F.3d 1090, 1098–99 (9th Cir. 2006). The Fourth Amendment inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Graham, 490 U.S. at 397. In Tatum, the Ninth Circuit held "that a police officer who promptly summons the necessary medical assistance has acted reasonably, even if the officer did not administer CPR." Id. at 1099.

Plaintiffs, faced with the above precedent, appear to abandon their claim that the officers should have personally administered first aid. Plaintiffs offer no contrary interpretation of the controlling authority, nor do they identify a single case that holds that personal medical care is constitutionally required. Plaintiffs instead create a new hybrid theory, stating "[p]laintiffs submit that the officers had a duty after summoning medical care, not to unreasonably hinder or delay the provision of that care to the decedent, or in the alternative, to administer reasonable medical care . . . if they were not going to permit paramedics to attend the decedent." (Opp'n at 14.) Plaintiffs' argument concerning the "staging" of the medical units is addressed below. However, the Court examines Plaintiffs' claims as pleaded, specifically whether Defendants had a duty to personally provide medical aid to Mr. Dunbar before the arrival of the medical units.

In this case, the officers promptly summoned medical aid for Mr. Dunbar. Shortly after the shooting, Officer Lopez directed Officer Porter to radio for medical assistance, which Officer Porter did. Under the law, this is sufficient to show the officers acted reasonably; thus, Plaintiffs are entitled to summary judgment. See Duenez v. City of Manteca, 2013 WL 6816375, at *11

---

[5] Defendants contend that partial summary judgment is warranted since Plaintiffs brought their inadequate medical aid claims under the Fourteenth amendment, instead of the Fourth. (Motion at 7.) Plaintiffs concede that the Fourth Amendment supplies the correct standard, yet argue that the Fourth Amendment is only enforceable against the states through the Fourteenth Amendment. (Opp'n at 15.) Since the Court grants the Motion, this dispute is moot.

(E.D. Cal. Dec. 23, 2013) (granting summary judgment to officer who did not personally provide medical care to suspect he shot because emergency medical care was immediately summoned); Mejia v. City of San Bernardino, 2012 WL 1079341, at *5 n. 12 (same); Wilson v. Meeks, 52 F.3d 1547, 1554-55 (10th Cir. 1995) (citing Maddox and finding officer who summoned medical help immediately after shooting but left detainee on the ground face down with labored breathing had no duty to render first aid). Despite the moral considerations present, the "Constitution does not empower [the Court] to command police officers to show compassion for those they injure in the line of duty." Wilson, 52 F.3d at 1556.

### D. The "Staging" of the Medical Units

After receiving the radio call from Officer Porter, RFD Engine #3 and AMR were dispatched to the scene. Plaintiffs argue that these medical units were ordered to "stage" – to wait nearby for police clearance before approaching – and this delay was unreasonable. (Opp'n at 8-10, 13-14)

However, the FAC is completely devoid of this allegation. The factual allegations in the FAC concerning post-shooting medical care all relate to Defendants' failure to personally provide medical care to Mr. Dunbar.[6] It is well established that a plaintiff may not amend his complaint in an opposition to summary judgment. See Trishan Air v. Fed Ins. Co., 635 F.3d 422, 435 (9th Cir. 2011) (claim first mentioned in opposition to summary judgment "was not properly before the district court"); Navajo Nation v. U.S. Forest Service, 535 F.3d 1058, 1079-80 (9th Cir. 2008) (where "complaint does not include the necessary factual allegations to state a claim, raising such claim in summary judgment motion is insufficient to present the claim to the district court"); Wasco Products, Inc. v. Southwall Technologies, Inc., 435 F.3d 989, 922 (9th Cir. 2006) "summary judgment is not a procedural second chance to flesh out inadequate pleadings."); Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 968-69 (9th Cir. 2006) (plaintiff cannot defeat summary judgment based on "specific factual allegations presented for the first time in [her] opposition to summary judgment").

Moreover, Defendants have submitted overwhelming evidence that the fire department and ambulance were not staged when they arrived on the scene.[7] At 2:30 am, immediately after

---

[6] For example, Plaintiffs allege that Defendants "made no attempt to timely render basic first aid to stop or mitigate the bleeding," "prevented [Dunbar] from even self-administering a tourniquet to save his own life," and "fail[ed] to provide emergency medical attention to him before the ambulance arrived." (FAC ¶¶ 29-30; see also ¶¶ 62, 64, 79)

[7] Normally, the Court would not rely on this evidence. See Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) ("We agree with the Seventh Circuit, which held that '[w]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-] movant an opportunity to respond."); see also El Pollo Loco, Inc. v. Hashim, 316 F.3d 1032, 1041 (9th Cir. 2003) (citing Provenz for the proposition that a "district court may consider new evidence presented in a reply brief if the district court gives the adverse party an opportunity to respond") However, as discussed above, Plaintiffs' pleadings did not provide Defendants notice of Plaintiffs "improper staging" claim. (continued . . . )

Officer Porter's transmission, the Riverside Fire Department ("RFD") initiated the call for service and dispatched AMR and RFD Engine #3. (Jensen Decl., Exh. 603, RFD Incident Recall print-out ("RFD Incident Log") at 1, Doc. No. 27-5.) The dispatcher indicated that the call was for a police emergency and that the medical units were to "stage," meaning that upon arrival, the units were to wait nearby until cleared by the police to enter the scene. (Williams Decl. ¶ 8; Williams Decl., Exh. 602-A, Transcript of RFD Channel 2 radio traffic ("Transcript RFD 2") at 1.) It was standard operating procedure for the fire dispatcher to tell the medical units to stage when responding to a police emergency. (Williams Decl. ¶ 8.)

However, while RFD Engine #3 was en route to the scene, RFD dispatch advised Engine #3 that it was "clear to roll in", meaning that it was not necessary to stage. (Transcript RFD 2 at 1.) This is also corroborated by the RPD Channel 3 recording, in which an officer tells dispatch to have the medical units "roll in." (RPD Channel 3 at 15:34.)

RFD Engine #3 arrived on the scene at 2:38 am, without staging or waiting for police clearance to approach. (RFD Incident Log at 1; Williams Decl. ¶ 10.) Michael Williams, a fire captain also trained as an EMT, was one of three firefighters onboard. (Williams Decl. ¶ 12.) Another one of the three was trained as a paramedic. (Id.) Upon arrival, the three exited the fire engine, unloaded their emergency medical equipment, and proceeded directly to Mr. Dunbar's location. (Id.) This process took a minute or two. (Id.) Mr. Williams attests that there was no delay in providing medical care to Mr. Dunbar. (Id.) This is corroborated by the AMR Pre-Hospital Care Report, which states that AMR arrived at the scene at 2:38 am and Mr. Dunbar was being treated by 2:40 am. (Casselman Decl., Ex. K. at 1-2.)

Plaintiffs' evidence on the "staging" theory fails to create a genuine issue of material fact. Plaintiffs argue that Officer J. Brandt, another officer on the scene, created a "Major Incident Log" that purportedly shows that the paramedics entered the scene at 2:45 am. (Plaintiffs' SUF ¶ 106.) However, Plaintiffs did not submit this Major Incident Log as evidence.[8] Thus, the Court cannot consider it. Plaintiffs also attempt to construe evidence from Officer Lopez's belt-recording to show that the medical units were staged. (Opp'n at 8.) Plaintiffs argue that six minutes into the belt recording made by Officer Lopez, "it can be heard that paramedics have arrived and/or are being staged." (Plaintiffs' SUF ¶ 108.) However, the only sound at the moment Plaintiffs indicate is unintelligible radio traffic. (Lopez Belt Recording at 6:11.) Plaintiffs then state that "at least two minutes after the paramedics have arrived and/or are being staged, an officer can be heard telling Dunbar to 'hold still' and that the medic is here." (Plaintiffs' SUF ¶ 109, citing Lopez Belt Recording at 6:26.) While an officer does tell Mr. Dunbar to "hold still" and that the "medics are here," it is unclear how this shows that the

---

( . . . continued)

Thus, Defendants did not have a reason to submit this evidence in the Motion, and only submitted it after Plaintiffs' Opposition put forward their new "improper staging" argument. Plaintiffs also submitted evidence purportedly supporting their improper staging argument along with the Opposition, so both sides have had an opportunity to present evidence on whether the medical units were staged or not.

[8] Defendants also did not submit the Major Incident Log.

medical units are being staged. As Mr. Williams declares, RFD Engine #3 arrived at 2:38 am and took one to two minutes to collect their medical equipment and walk to Mr. Dunbar's location. (Williams Decl. ¶ 12.) Thus, the officer's statement that "medics are here" suggests that the paramedics have arrived on scene but are not yet in the backyard. Finally, Plaintiffs argue that eight minutes into the belt recording, an officer says "we ought to get them in here and get started right," and is referring to the fact that paramedics have not been permitted to treat Mr. Dunbar yet. (Plaintiffs' SUF ¶ 28.) However, Officer Lopez declares that this statement was actually made by one of the RFD medics, who stated "well we're all going to get in here and get started right." (Lopez Supp. Decl. ¶ 9.) The Court, after reviewing the recording, finds Plaintiffs' interpretation of the statement is inaccurate.

Accordingly, the Court finds Defendants summoned medical care immediately and did not impede the medical units from getting to Mr. Dunbar. Therefore, the Court GRANTS partial summary judgment on Plaintiffs' Section 1983 claims as to the issue of adequate post-shooting medical care.

### E. Plaintiffs' Monell and Conspiracy Claims

Defendants also move for partial summary judgment, as to the post-shooting medical care, on Plaintiffs' Monell and conspiracy claims. Plaintiffs do not specifically contest summary judgment on these issues, beyond restating their central argument: that the officers failure to provide adequate medical care infringed Mr. Dunbar's Fourth Amendment rights.

"Neither a municipality nor a supervisor [can] be held liable under § 1983 where no injury or constitutional violation has occurred." Jackson v. City of Bremerton, 268 F.3d 646, 653 (9th Cir. 2001). "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

As the Court has found the officers post-shooting conduct did not violate Mr. Dunbar's constitutional rights, the Court GRANTS summary judgment on the post-shooting medical aid component of Plaintiffs' Monell claim.

Plaintiffs' sixth cause of action, conspiracy under 42 U.S.C. § 1985, also requires an underlying constitutional claim. "Section 1985(3) provides no substantive rights itself: it merely provides a remedy for violation of the rights it designates." Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979). Therefore, summary judgment is appropriate if there has been no constitutional violation. See Caldeira v. County of Kauai, 866 F.2d 1175 (9th Cir. 1989) ("The absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations"); Brew v. City of Emeryville, 138 F. Supp. 2d 1217, 1226 (N.D. Cal. 2001) (granting summary judgment on section 1985 claim due to plaintiff's failure to prove a section 1983 deprivation claim).

Accordingly, the Court GRANTS summary judgment on the post-shooting medical aid component of Plaintiffs' Section 1985 conspiracy claim.

### F. Plaintiffs' State Law Claims

Defendants also move for partial summary judgment on Plaintiffs' state law claims, insofar as they involve the subject of medical aid to Mr. Dunbar. (Motion at 20-23.) Plaintiffs reference the post-shooting medical care provided to Mr. Dunbar in several of their state law causes of action.[9] However, as the Court has found the officers' actions post-shooting to be "objectively reasonable," Plaintiffs' state law claims fail as a matter of law.

The California Supreme Court has held that a finding of "objective reasonableness" on a § 1983 claim precludes state law claims of wrongful death and negligence premised on the same underlying facts. Hernandez v. City of Pomona, 46 Cal.4th 501, 513-518 (2009). Plaintiffs offer no contrary interpretation of the California Supreme Court's holding. Plaintiffs recite several California cases finding that police officers must meet the duty of ordinary care in carrying out their duties. (Opp'n at 18.) These cases are irrelevant given the holding in Hernandez.

Therefore, the Court GRANTS summary judgment on the post-shooting medical aid component of Plaintiffs' negligence and wrongful death claims. See Sanders v. City of Fresno, 551 F. Supp. 2d 1149 (E.D. Cal 2008). ("Because the Court has found no violation of [decedent's] constitutional rights, summary judgment in favor of defendants on [plaintiff's] state counterpart causes of action for wrongful death . . . is appropriate.") A public entity is not liable for its employee's acts when the employee is not liable, because there is "no basis for respondeat superior liability." Cal. Gov't. Code § 815.2(b); Martinez v. County of Los Angeles, 47 Cal. App. 4th 334, 350 (1996). Therefore, the Court also GRANTS summary judgment on the post-shooting medical aid component of Plaintiffs' respondeat superior claim against the City of Riverside.

Plaintiffs' claim of intentional infliction of emotional distress likewise fails. Intentional infliction of emotion distress requires "extreme and outrageous conduct." Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965 (1993). As the Court has found Officer Lopez and Officer Porter's post-shooting conduct to be "objectively reasonable," the same conduct cannot also be extreme and outrageous. See Sanders 551 F. Supp. 2d at 1180 ("the court has determined that the officers acted reasonably . . . since the officers' conduct was reasonable, it cannot be extreme and outrageous"). Thus, the Court GRANTS summary judgment on the post-shooting medical aid component of Plaintiffs' claim of intentional infliction of emotional distress.

---

[9] Plaintiffs' wrongful death, negligence, and intentional infliction of emotional distress all contain allegations relating to inadequate post-shooting medical care.

## V.  CONCLUSION

For the foregoing reasons, the Court GRANTS partial summary judgment to Defendants on the issue of post-shooting medical care.

**IT IS SO ORDERED.**